IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ISAAC MARK RAMIREZ,

    Plaintiff,

v.	CIV 14-1107 JCH/KBM

MIKE HEREDIA and
J. BEAIRD,

    Defendants.

## PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Defendants' *Martinez* Report (*Doc. 24*), filed August 24, 2015, which asks the Court to construe as a Motion for Summary Judgment. Plaintiff filed a response to the *Martinez* Report on September 21, 2015, asking the Court to construe the response "as a Motion for Summary Judgment . . . and enter its order granting summary judgment in favor on all of Plaintiff's claims against Defendants." *Doc. 27* at 1. Defendants filed a reply to the *Martinez* Report (*Doc. 29*) on October 8, 2015. Also before the Court is Plaintiff's Motion for an Evidentiary Hearing (*Doc. 22*), filed July 15, 2015. The Honorable Judith C. Herrera referred this matter to me on December 10, 2014, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 4.* I find that an evidentiary hearing is unnecessary for the ultimate disposition of this case.

Having considered the parties' submissions, the relevant law, and the record in this case, the Court recommends that Plaintiff's Motion for Evidentiary Hearing be denied and that summary judgment be granted in favor of Defendants.

I.   **Background**

On December 5, 2014, Isaac M. Ramirez ("Plaintiff"), an inmate in the custody of the New Mexico Corrections Department ("NMCD") who is proceeding *pro se*, filed a Civil Rights Complaint in this Court. Doc. 1. In his Complaint, Plaintiff alleges that although he was not subject to any misconduct reports[1] for incidents alleged to have occurred between December 15, 2013 and February 28, 2014, he was nevertheless placed in Level VI custody status. *Id*. at 4. Plaintiff contends that he was not allowed to participate in the hearing regarding his custody status, to challenge confidential information against him, or to introduce exculpatory evidence such as witness statements and video recordings. *Id*. Plaintiff asserts that Defendants' actions violated his due process rights and that his placement amounts to cruel and unusual punishment. *Id*. at 4-5. He seeks equitable relief in the form of "immediate release from long term disciplinary segregation[2] and re-classification." *Id*. at 5.

---

[1] Plaintiff maintains that Defendants Heredia and Beaird "had the responsibility to produce a misconduct report within the allowed time limits." Doc. 1 at 4.

[2] Plaintiff refers to "disciplinary segregation" and "disciplinary proceedings" throughout his Complaint and briefing. Defendants, however, insist that this case does not involve the disciplinary process but, rather, administrative classifications and security-level determinations. *Doc. 24* at 12-13. Defendants' position is supported by the undisputed facts herein as well as the Tenth Circuit's treatment of the two distinct processes. *See, e.g., Doc. 24*, Ex. N, at Defendants 481 (Defendant J. Beaird stating in an affidavit that "[a]lthough disciplinary infractions may affect an inmate's security level, separate procedures apply to disciplinary infractions and classification determinations"); *Bailey v. Shillinger*, 828 F.2d 651, 652-53 (10th Cir. 1987) (concluding that administrative segregation -- that is, segregation for administrative reasons involving the safety of prison employees and other inmates – did not invoke the same due process protections as disciplinary proceedings).

The following facts are either undisputed by the parties or, where disputed, are presented in the light most favorable to Plaintiff. Facts set forth in Defendants' summary judgment motion not specifically controverted by Plaintiff are deemed undisputed.[3] *See* D.N.M. LR-Civ. 56.1(b).

On July 29, 2011, Plaintiff pleaded guilty to ten felony offenses, including second degree murder and conspiracy to commit first degree murder. *Doc. 24*, Ex. C, at Defendants 00120-00129. Plaintiff was ordered to serve 26 years in the custody of the New Mexico Corrections Department ("NMCD") followed by a two-year term of parole. *Id.* at Defendants 00116. The remainder of Plaintiff's sentence, 13 years, was suspended. *Id.*

Pursuant to NMCD policy, an objective rating process is used to assign a classification score and corresponding security level upon an inmate's commitment to the custody of NMCD. *Doc. 24*, Ex. F, at Defendants 00191; Ex. N, at Defendants 00478. Of the six security levels established by the NMCD for inmate classification, Level VI is the highest. *Doc. 24*, Ex. F, at Defendants 194-00197; Ex. N at Defendants 00478. Level VI applies both to inmates who require protection as well as to those who pose a threat to security. *Doc. 24*, Ex. F, at Defendants 00196-00197; Ex. N, at Defendants 0478.

At the commencement of his sentence in October 2011, Plaintiff was assigned to security Level III. *Doc. 24*, Ex. C, at Defendants 0086; Ex. N, at Defendants 00479. This assignment was based, in part, on the severity of his convictions and his suspected

---

[3] The Court notes that Plaintiff's response does not identify any material facts cited by Defendants that are in dispute, as required by D.N.M.LR-Civ. 56.1 and Federal Rule of Civil Procedure 56(e). Nevertheless, the Court has considered his legal contentions and relevant factual assertions, though not technically compliant with these procedural rules. Plaintiff does not present specific, admissible facts demonstrating a genuine issue for trial.

gang membership. *Doc. 24*, Ex. C, at Defendants 00086; Ex. N at Defendants 00479. The next month, on November 22, 2011, Plaintiff was transferred to Lea County Correctional Facility ("LCCF"), where Defendant J. Beaird served as the Security Warden and, at relevant times, Defendant Mike Heredia served as an administrative captain. *Doc. 24*, Ex. A; Ex. N, at Defendants 00476; Ex. O, at Defendants 00482. LCCF is designated as a Level III facility, and as such, is authorized to house Level VI inmates only on an interim basis. *Doc. 24*, Ex. F, at Defendants 00195; Ex. G, at Defendants 00327; Ex. N at Defendants 00478. Interim Level VI is defined as "[t]emporary placement of the inmate in the segregation unit by the shift supervisor or unit manager based on inmate meeting the Level VI placement criteria including threat to the security of the institution and/or protection needs." *Doc. 24*, Ex. G, at Defendants 320.

    NMCD Policy CD-143002 provides the criteria and procedures for placing an inmate in Level VI status. *Doc. 24*, Ex. I; Ex. N, at Defendants 00478. According to that policy, security officials are permitted to place an inmate in Level VI status for various reasons, including if he poses a threat to the security of the institution. *Doc. 24*, Ex. I, at Defendants 00344; Ex. N, at Defendants 0478. A "Threat to the Security of the Institution" is defined as "[a]ny behavior or situation which involves, causes or is reasonably likely to cause acts of violence, a substantial risk of death or serious injury to any person, substantial destruction of property, escape or risk of escape, and it also includes introduction of contraband or conspiracy or attempt to introduce contraband." *Doc. 24*, Ex. G, at Defendants 00321.

Pursuant to NMCD procedure, officials must review Interim Level VI placement within 72 hours to determine whether the inmate should remain at that interim status. *Id.* at 00329. Then, within five working days of an inmate's placement in Interim Level VI, he must receive an Interim Level VI Classification Committee hearing with notice of the hearing at least 48 hours before it occurs. *Doc. 25*, at Defendants 00332-00333. The Committee determines whether the inmate meets eligibility criteria for Level VI status and whether he should be referred to the Central Office Classification Bureau for transfer to a designated Level VI unit. *Id.* at Defendants 00333.

When an inmate is referred to the Classification Bureau for possible transfer, the Classification Bureau Chief decides whether he should be classified to Level VI within two working days of receipt of the referral. *Doc. 24*, Ex. I, at Defendants 00348. If the Classification Bureau determines that an inmate should be placed at a Level V or Level VI facility, he is transferred once space is available. *Id.* at Defendants 00348. Upon arrival at a Level VI facility, the inmate is given an Initial Level VI Hearing as well as the opportunity to appeal to the Director of Adult Prisons. *Id.* at Defendants 00351. The Classification Bureau reviews and renders final decisions on all intra-state inmate transfers. *Doc. 24*, Ex. F, at Defendants 00315.

According to Defendant Heredia, he received confidential information from multiple sources between December 2013 and March 2014, indicating that Plaintiff had threatened their safety. *Doc. 24*, Ex. O, at Defendants 00482. The sources requested that they be placed in protective custody because of concerns that Plaintiff would harm them. *Id.* Based upon this information and Plaintiff's suspected membership in a Las Cruces based gang, Defendant Heredia placed Plaintiff in Interim Level VI status on

5

March 21, 2014. *Id.* at Defendants 00483. That same day, a Level VI/Interim Level VI/PHD/Disciplinary Placement form was completed and delivered to Plaintiff. *Id.*

A hearing was held by the Classification Committee at LCCF on March 26, 2014. *Id.* Following the hearing, the Classification Committee recommended that Plaintiff remain in Interim Level VI status pending referral to the NMCD Classification Bureau for transfer to a Level VI facility. *Id.* That recommendation was upheld by the Classification Warden on March 27, 2014. *Doc. 24*, Ex. B, at Defendants 00012. In accordance with NMCD procedures, Plaintiff's status was reviewed every seven days thereafter. *Id.* at Defendants 0007-00011 (April 2, 9, 16, and 23 in 2014).

On April 25, 2014, Defendant Heredia provided Plaintiff a memorandum summarizing the information received from four confidential informants. *Id.* at Defendants 00005-00006; Ex. O, at Defendants 00483. Then, on May 16, 2014, Defendant Beaird drafted a memorandum to the Acting Classification Bureau Chief at NMCD, referring Plaintiff for placement in a Level VI facility. *Doc. 24*, Ex. B, at Defendants 00003-00004; Ex. N., at Defendants 00480. That memo was submitted to the Classification Bureau Chief on May 20, 2014, and she approved Plaintiff for Level VI placement on May 21, 2014. *Doc. 24*, Ex. B, at Defendants 0002, 00050; Ex. N, at Defendants 00480. On May 23, 2014, Plaintiff was transferred to Penitentiary of New Mexico ("PNM"), which is a Level VI facility. *Doc. 24*, A; Ex. G, at Defendants 00327.

On June 10, 2014, Plaintiff was served with notice of an Initial Level VI Hearing. *Doc. 24*, Ex. C, at Defendants 00047. The Initial Level VI Hearing was held two days later on June 12, 2014. *Doc. 24*, Ex. C, at Defendants 00046. The Classification

Committee at PNM recommended placement in Level VI status, and that recommendation was affirmed by the administration. *Id.* at Defendants 00046.

Plaintiff appealed his Level VI placement on June 15, 2014. *Id.* at Defendants 00040-00042. Plaintiff made various arguments, including that he was not allowed to provide input or challenge the truthfulness of the confidential information that was the basis for his placement in Level VI status and that Defendant Heredia included false dates and statements in the summary he provided to Plaintiff. *See id.* On July 7, 2014, the Director of Adult Prisons Division, Jerry Roark, affirmed the decisions of the Corrections Department administrators to place Plaintiff in Level VI. *Id.* at Defendants 00039.

At the time of the parties' briefing Plaintiff was housed at PNM, where he had been incarcerated since May 23, 2014. *Doc. 24*, Ex. A. Defendant Beaird and Captain Heredia do not work at PNM. *Doc. 24*, Ex. N, at Defendants 00480; Ex. O, at Defendants 0483. Following Plaintiff's transfer to PNM, neither Defendant Beaird nor Captain Heredia had any authority to alter or amend Plaintiff's classification level. *Doc. 24*, Ex. N, at Defendants 0481; Ex. O, at Defendants 00483. Instead, changes to his classification could only be made by classification officials at PNM or NMCD's central office. *Doc. 24*, Ex. N, at Defendants 00481; Ex. O, at Defendants 00483.

Under NMCD's step system, which assists inmates in moving from Level VI to Level V status, *see Doc. 24*, Ex. J, K, L, Plaintiff completed the Level VI step progression and was recommended for Level V status in March 2015. *See Doc. 24*, Ex. C, at Defendants 00032, 00036.

Plaintiff attaches to his response brief various exhibits, including a Quarterly Good Time Sheet dated October 1, 2014, a series of e-mail messages between his family members and prison officials, as well as the unauthenticated statement of Matthew Alarcon. *Doc. 27*, at 16-17; Doc. 28, at 1-13. The October 1, 2014 Quarterly Good Time Sheet is signed by "C Lopez," who is not a party to this action, and it seems to indicate that Plaintiff was subject to a reduction of good time earned for the following reasons: "no ID on person, verbal abuse for low eval." *See Doc. 27 at 16*. Mr. Alarcon's statement, in turn, indicates that he, like Plaintiff, was placed in Level VI status for "predatory intimidating and extortion of other inmates forcing them to seek protective custody." *Doc. 28* at 6-7. Mr. Alarcon states that he did not witness Plaintiff engage in predatory behavior and that "no wrong has been proven against us." *Id.* at 9-10.

In a May 29, 2015 Memorandum Opinion and Order, this Court dismissed Plaintiff's claims against Defendant Corrections Secretary Marcantel for want of an affirmative link to the asserted violations. *Doc. 13* at 3. As to the remaining defendants, however, the Court determined that Plaintiff's allegations "may state claims for relief under § 1983," allowing those claims to proceed. *Id.* at 2.

## II.     Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once this initial burden is met, the burden shifts to the

8

nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party. *Id.* at 671. The nonmoving party may not rest on his or her pleadings, but must set forth specific facts "identified by reference to affidavits, deposition transcripts or specific exhibits incorporated therein" showing there is a genuine issue for trial. *Id.* "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (internal citations omitted).

A court must review pleadings of a *pro se* plaintiff liberally, holding them to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This does not mean, however, that the Court should "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**III.   Analysis**

In his Complaint, Plaintiff requests the following relief: "immediate release from long term disciplinary segregation and re-classification to the most appropriate level of custody and best interest for me . . . and my well-being." *Doc. 1* at 5.  Additionally, in his response brief, Plaintiff requests the restoration of good time credits. *Doc. 27* at 15. Defendants contend that they are entitled to summary judgment on Plaintiff's claims

because: 1) the injunctive relief requested by Plaintiff cannot be granted against Defendants, rendering such claims moot; 2) Plaintiff's request for restoration of good time credits is barred by *Heck v. Humphrey* and its progeny; and 3) Defendants Heredia and Beaird did not violate Plaintiff's constitutional rights. *See Doc. 24* & *Doc. 29*. Because the Court recommends resolving Plaintiff's claims on the first two bases, it does not reach the merits of Plaintiff's constitutional claims.

### A. Mootness

Defendant maintains that the doctrine of mootness applies to the injunctive relief sought by Plaintiff. The mootness doctrine provides that "although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." *See Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011); *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'").

Generally speaking, when an inmate's claims for injunctive relief relate to the conditions of confinement at a penal institution in which he is no longer incarcerated, courts have determined that no relief is available to him.[4] *Jordan*, 654 F.3d at 1027; *see also Sossamon v. Texas*, 131 S. Ct. 1651, 1669 (2011) ("A number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits.")

---

[4] While Courts have been disinclined to find inmates' injunctive claims moot when they challenge "policies that apply in a generally uniform fashion," Jordan, 654 F.3d at 1028, Plaintiff's claims cannot be characterized in this manner. Moreover, no government official remains in this case who might effectuate any prospective relief that might potentially be granted in response to Plaintiff's claims.

10

This begs the question whether Plaintiff's transfer from LCCF to PNM rendered his claims for injunctive relief moot.  *See Jordan*, 654 F.3d at 1027 ("When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system, courts are presented with a question of possible mootness."). Relatedly, when an inmate sues a government official who is subsequently "divested of responsibility for the challenged conduct or activity during the pendency of the action," the inmate's claims against that official become moot.  *Jordan* at n.16 (citing 15 Moore § 101.94, at 101-257); *see also Munir v. Scott*, 792 F. Supp. 1472, 1476 (E.D. Mich. 1992) (finding an inmate's claims moot where they related to conduct personal to a particular official and there were subsequent changes in personnel).

*Jordan v. Sosa* is instructive here.  There, the Tenth Circuit considered an inmate's civil rights action for declaratory judgment and injunctive relief against certain specifically-named officials of the Federal Bureau of Prisons, challenging a regulatory ban on sexually explicitly commercially published materials. *Id.* at 1015. Considering the effect of the plaintiff's transfer to other prison facilities on these claims, the court concluded that the claims were constitutionally moot, because issuing the requested injunctive relief against the named officials, who were no longer located at the same penal institution as the plaintiff, would have no "effect in the real world." *Id.* at 1030.

Likewise, here, ordering the named Defendants to immediately release Plaintiff from segregation and to re-classify him to the most appropriate level of custody would accomplish nothing. Plaintiff's claims are personal and particular to Defendant Beaird

and Defendant Heredia and to their alleged conduct against him at LCCF. Following his transfer from LCCF, these defendants were, in effect, divested of any authority over Plaintiff's security classification. Classification officials at PNM or NMCD's central office, none of whom are parties to this suit, were responsible for changes to Plaintiff's security level. Thus, if the Court were to reach the merits of Plaintiff's request for injunctive relief, the decision would, at most, provide guidance to non-party prison officials in classification decisions related to Plaintiff. *See Jordan*, 654 F.3d at 1030. The Court should not engage in the unproductive endeavor of issuing advisory opinions.

Notably, courts have been disinclined to find injunctive claims moot, even after transfer to a different penal institution, in one circumstance -- when the inmate challenges policies that apply in a generally uniform fashion. *See, e.g., Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) (reasoning that an inmate's transfer to a different penal institution mooted his claim against officials at the transferring prison but not his claim against the director of the prison system for a system-wide rule); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311-12 (10th Cir. 2010) (determining that an inmate's claims against a director of the state department of corrections were not moot, even though he had been transferred to a different facility, where claims related to a policy that applied throughout the prison system).

But, here, the Court is satisfied that Plaintiff's claims do not challenge a system-wide problem within NMCD. Instead, the Court reads Plaintiff's Complaint to relate to the particular circumstances under which he was placed in Level VI status, and more particularly, to Defendant Beaird and Defendant Heredia's alleged conduct in his classification process. Generally, Plaintiff contends that he did not meet the criteria for

Level VI placement, because he was not a security threat and did not engage in misconduct, and that Defendants' involvement in his security level classification did not comport with applicable policies and due process requirements.[5] *See generally Doc. 1 & Doc. 27*.

Additionally, there is another basis on which the Court recommends finding Plaintiff's claims moot. Although the parties indicated in their briefing that Plaintiff is housed at PNM, the Court's recent review of the New Mexico Corrections Department's "Offender Search" suggests that he was subsequently transferred to the Northeast New Mexico Detention Facility ("NENMDF").[6] Defendants Beaird and Heredia have demonstrated, and Plaintiff does not dispute, that they work at different facilities still: LCCF and CNMCF, respectively. Thus, Plaintiff's subsequent transfer to NENMDF would not cause either Defendant to resume authority over Plaintiff's classification status.[7]

Further, NENMDF's designation as a Level III facility, *see Doc. 24*, Ex. F, at Defendants 00195, leads to the inference that Plaintiff is no longer subject to Level VI

---

[5] For instance, Plaintiff alleges that he was not afforded impartial decision-makers, that he was not permitted to mount a defense or challenge confidential information against him, that he was not provided sufficient details regarding the confidential information used against him, and that he was not given adequate notice of hearings concerning his security status. *See Doc. 1 & Doc. 27.*

[6] This information is available through an offender search on the New Mexico Department of Correction's website (cd.nm.gov). Courts may take judicial notice of facts that are a matter of public record. *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

[7] Indeed, even the prospect that Plaintiff may one day be returned to LCCF, or transferred to CNMCF, where Defendants work, is insufficient to justify a decision by this Court on Plaintiff's claims. *Jordan*, 654 F.3d at 1032. As the Tenth Circuit stated in *Jordan*: "It should go without saying that we are disinclined to opine on important constitutional issues based upon the speculative suggestion that a plaintiff might be returned to a setting where he would be subject to allegedly unconstitutional practices." *Id.* at 1032.

custody. After all, facilities designated as Level III facilities only house Level VI inmates on an interim basis. *See Doc. 24*, Ex. F, at Defendants 00195; Ex. G, at Defendants 00327; Ex. N, at Defendants 00478. Additionally, Plaintiff's completion in March 2015 of the Level VI step progression and the corresponding recommendation that he be placed in a lower security status bolsters the inference that he no longer remains in Level VI custody. *See Doc. 24*, Ex. C, at Defendants 00032, 00036. Once again, the lack of any real world effect counsels against awarding the injunctive relief requested by Plaintiff. Plaintiff having apparently received the very relief he sought in his Complaint, it appears that no case or controversy remains.

For all of these reasons, the Court recommends finding Plaintiff's claim for injunctive relief moot.

### B. Restoration of Good Time Credits

While Plaintiff's complaint seeks only injunctive relief against Defendants, his subsequent briefing goes slightly further. That is, in his response to Defendants' summary judgment motion Plaintiff alleges that he suffered the loss of good time credit without procedural due process, and, for the first time, he asks the court "to mandate the NMCD to restore good time credit." *Doc. 27* at 15. Plaintiff attaches as an exhibit to his response brief a Quarterly Good Time Sheet dated October 1, 2014, which seems to indicate that he was subject to a reduction of good time earned for the following reasons: "no ID on person, verbal abuse for low eval." *See id.* at 16. Plaintiff does not develop this argument other than to assert that his loss of good time credits was without procedural due process and was because of "this complaint." *Id.* at 11. Defendants contend that by seeking the restoration of good time credits, Plaintiff seeks a judgment

14

that would necessarily imply the invalidity of his sentence, and that such a claim is barred by *Heck v. Humphrey*, 512 U.S. 422 (1994) and its progeny. *Doc. 29* at 4.

The United States Supreme Court determined in *Heck* that a state prisoner's claim for damages under § 1983 must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id. at* 487. More recently, in *Edwards v. Balisok*, 520 U.S. 641 (1997), the Court extended its rationale in *Heck* to an inmate's § 1983 claim for damages and declaratory relief challenging the validity of disciplinary procedures used to deprive him of good-time credits. *Id.* at 647. In *Edwards*, the Court concluded that an inmate's claims, which were premised upon allegations of bias by decision-makers in a disciplinary proceeding, necessarily implied the invalidity of the punishment imposed and were therefore not cognizable under § 1983. *Id.* at 648.

Following the rationale of *Heck* and *Edwards*, this Court agrees that Plaintiff's claim for restoration of good time credits is not cognizable under § 1983, particularly where he has not first established an entitlement to a shorter sentence through a writ of habeas corpus. *See Kailey v. Ritter*, 500 F. App'x 766, 769 (10th Cir. 2012) (when an inmate challenges the duration of his imprisonment, seeking a "speedier release" through restoration of good time credits, a judgment in his favor "would necessarily imply the invalidity of his sentence" and is therefore not cognizable absent a habeas proceeding invalidating that sentence); *see also Preiser v. Rodriguez*, 411 U.S. 475 , 500 (1973) (holding that the sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus). Thus, to the extent that

Plaintiff seeks the restoration of good time credits in the context of his § 1983 action, the Court recommends dismissal of that claim.

### C. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff's response to Defendants' summary judgment motion includes a request that the Court "construe [his] response to Defendants' *Martinez* Report as a Motion for Summary Judgment, and that after consideration of the facts and authorities cited herein, . . . enter its order granting summary judgment in favor on all of Plaintiff's claims against Defendants. *Doc. 27* at 1. Yet Plaintiff's cross-motion for summary judgment does not comply with Federal Rule of Civil Procedure 56, and his allegations are not properly supported by evidence. But, more importantly, Plaintiff does not dispute that his claims against Defendants were rendered moot by his transfer to a different facility or that his request for restoration of good time credits is barred by *Heck* and its progeny. Nor does he otherwise demonstrate that he is entitled to entry of judgment as a matter of law. As such, the Court recommends denial of Plaintiff cross-motion for summary judgment.

## IV. Conclusion

Wherefore,

**IT IS FURTHER RECOMMENDED** that Plaintiff's Cross-Motion for Summary Judgment (*Doc. 27*) be **denied**.

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Evidentiary Hearing (*Doc. 22*) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' *Martinez* Report, construed herein as a Motion for Summary Judgment, (*Doc. 24*) be **granted** and that Plaintiff's

claims be **dismissed with prejudice.**

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE